IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| vs. | § § § § | 5:20-CR-00454 (5)-OLG |
| DAVID CORTEZ, JR. (5), | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the Motion to Suppress filed by Defendant David Cortez, Jr. Dkt. No. 325. The District Court referred the motion for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Western District of Texas Local Rules CR-58 and Appendix C. After reviewing the Motion to Suppress, Dkt. No. 325, the Response filed by the Government, Dkt. No. 329, and the entire record in this case, the undersigned recommends that the motion be **DENIED** without a hearing.

**Background**

A special agent with the Drug Enforcement Administration ("DEA") submitted for approval to the undersigned a search-warrant application and supporting affidavit requesting a warrant to search 10 distinct residences, including the residence of Defendant David Cortez, Jr. On October 1, 2020, the undersigned approved the request and authorized the searches. Officers executed the warrant at Cortez's residence in the early hours of October 2, 2020.

The warrant application package submitted for approval by the Court includes a warrant application, two attachments incorporated into the application and attached to it, an affidavit in support of the warrant request, the warrant, and the same two attachments incorporated into the

1

warrant. *See* Dkt No. 3 in *United States v. Sealed*, 5-20-MJ-01206-RBF (hereinafter, "Warrant Package"). The Attachments provide detailed information on the places to be searched and items to be seized.

Attachment A identifies the locations to be searched. Accompanying photographs for each location are imbedded into the document. For each location, further details are also provided that specifically identify the location. *See id*. at 2-12. In the case of Defendant's residence, identified in the Warrant Package as target "Premises 8," Attachment A explains as follows:

> [The residence] is located in an apartment complex on the south side of E. Commerce St., between Spriggsdale Blvd. and Gay Blvd. Premises 8 is located in a two story, beige and brown with white trim multifamily apartment building labeled with the number "9". There are two covered entrances on the front of the building, which provide access to doors for apartments located on the ground floor, as well as stairs that lead to apartments on the second floor. Premises 8 is located on the ground floor of building 9, and is labeled with the number "905" on the front of the residence, across the hall from Apt. 907.

*Id*. at 10. Immediately below this description an aerial photograph provides an indicator marking the building in which the premises is located.

And in Attachment B, the items to be searched and seized at each location are identified. *Id*. at 13-14. They include records and proceeds of narcotics trafficking found in any of the target locations, evidence of criminal activities in target locations one through eight, evidence related to illegal firearms in locations one through seven, and narcotics and related paraphernalia in location one. *Id*.

A sworn affidavit supports the warrant application. Cortez's motion primarily attacks the warrant and its recitation of facts in support of probable cause to support the issuance of the warrant. *See id.* at 15-34.

**Analysis**

Through his Motion to Suppress Evidence, Defendant Cortez seeks to suppress "all evidence seized, all statements made and any evidence derived therefrom resulting from the execution of" the search warrant in question. Mot. at 1.

**A.     The Motion Raises the Fourth Amendment and *Leon*'s Good Faith Exception.**

The Fourth Amendment provides a right "of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Cont. Amend. IV. To avoid violating this right, law-enforcement officers typically must demonstrate probable cause and obtain a warrant before conducting searches or seizures. Violations of Fourth Amendment rights in this context can be remedied by exclusion of evidence obtained. *See United States v. Calandra*, 414 U.S. 338, 348 (1974). But in *United States v. Leon*, the Supreme Court held that this "exclusionary rule" doesn't apply when officers act in "reasonable reliance" on a search warrant, even if the warrant is later deemed invalid. *See generally United States v. Leon*, 468 U.S. 897 (1984); *see also, e.g., United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997) (noting, "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible . . . , even though the affidavit on which the warrant was based was insufficient to establish probable cause").

A two-step process typically applies to the evaluation of a request, like Cortez's, to suppress evidence obtained following the execution of a search warrant. First, a court will consider "whether the seizure falls within the good-faith exception to the exclusionary rule." *United States v. Davis*, 226 F.3d 346, 350-51 (2000). If good faith is found lacking, the court then evaluates the probable-cause finding to see "whether the magistrate [judge] had a

substantial basis for finding probable cause." *United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004); *Davis*, 226 F.3d at 351.

Cortez's motion frames the issue before the Court as whether *Leon*'s good-faith exception applies or should itself be excepted based on one or both of the following related two grounds: (1) the warrant's affidavit is a "bare bones" affidavit so "lacking in [the] indicia of probable cause" that belief in the existence of probable cause "is entirely unreasonable"; and (2) the warrant was rubber-stamped and the undersigned magistrate judge "wholly abandoned his judicial role and acted as a part of law enforcement rather than a check on its zeal." Mot. at 4 (citing *United States v. Davis*, 226 F.3d 346 (5th Cir. 2000), and *United States v. Pope*, 467 F.3d 912 (5th Cir. 2006)). Because neither argument requests or requires additional development of the record, a hearing on the motion is not necessary. The Court therefore decides the issue on the existing record and argument reflected in the motion and corresponding response. There is no reply filed in support of the motion.

**B.     The Probable Cause Finding Is Reasonable.**

A finding that the probable cause determination was reasonable would effectively defeat both of Cortez's arguments. He does not contend otherwise. He does not, for example, urge that a magistrate judge could reasonably find probable cause but still wholly abandon his or her judicial role and act as a mere rubber stamp. Probable cause for a search, "although not reducible to precise definition or quantification," is presented when the facts available, and the reasonable inferences drawn from them, "would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present" in the place to be searched. *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quotation marks omitted and otherwise cleaned up). It is readily apparent that sufficient indicia of probable are presented here to mandate rejecting Defendant's "bare bones" and "rubber stamp" arguments.

The sworn affidavit provided in support of the search warrant application includes information about an overall alleged conspiracy to distribute narcotics, along with information specific to Cortez and his home. Although probable cause must be "particularized with respect to [a] person" targeted for search, *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), probable cause also takes into account the totality of the circumstances presented, *Illinois v. Gates*, 462 U.S. 213, 230-231 (1983); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) ("Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances."). Here, evidence of the overall conspiracy is significant, and there is sufficient evidence particularized to Cortez and his residence to more than support a finding of probable cause, let alone determine that such a finding was not "entirely unreasonable."

Regarding the conspiracy, the affidavit begins by explaining the affiant's participation "in an investigation of members of the Texas Mexican Mafia," including Cortez and others, for their roles in the alleged conspiracy to commit drug-trafficking and other offenses. Warrant Package at 16-17. The affidavit relates, in varying degrees of detail, information concerning five controlled narcotics transactions involving alleged Texas Mexican Mafia members, including information obtained with the assistance of a confidential source. *Id.* at 19-21. A footnote discusses the confidential source, the source's possible motivations for providing assistance, and the reasons the affiant believed—and a neutral magistrate judge could reasonably conclude—that the confidential source was credible and reliable. Those reasons include corroboration of the source's statements by "physical evidence in the form of narcotics purchased by [the source], consensually monitored drug-related telephone calls and text messages, telephone record analysis, and physical surveillance." *Id.* at 18 n.1. By way of further example, the affidavit relates various controlled purchases as well as a seizure of kilogram quantities of methamphetamine following information provided by the source.

The various alleged participants in the conspiracy are identified as members or prospective members in the Texas Mexican Mafia, including Cortez. This identification is made based on "discussions with multiple law enforcement agencies who have conducted or are currently conducting investigations into the Texas Mexican Mafia, and confirmed by" the same confidential source mentioned in the preceding paragraph. *Id.* at 18 n.1. Cortez is identified in this way as "a Sergeant for the [Texas Mexican Mafia]." *Id.* at 19. Further, although no further detail is provided, the affiant also notes in the sworn affidavit that "CORTEZ reported to [a principle target of the investigation] that he had successfully collected narcotics proceeds so that [the target] could go forward with a planned purchase of multi-kilogram quantities of methamphetamine. CORTEZ is a convicted felon." *Id*.

Other evidence concerning a then-ongoing narcotics conspiracy is supplied in the affidavit by descriptions of intercepted conversations beginning in August 2020 and including conversations between Defendant and others about the negotiations and possible purchase of large amounts of methamphetamine. *Id.* at 21-22. In particular, the affidavit explains that agents with the DEA "obtained authorization to intercept communications over [one target of the investigation's] phone." *Id*. at 21. Another target of the investigation agreed, in these intercepted conversations, to sell the first target "seven kilograms of methamphetamine, and [to] front an additional three kilograms to be paid for later." *Id*. The first target, "[d]uring these negotiations, called various members of the [Texas Mexican Mafia] and other customers to see how much [methamphetamine] they wanted, and whether they had money to contribute up front." *Id*. Among those called and with whom the target of the wire intercept "discussed this transaction [ ] were CORTEZ." *Id*. When two members of the alleged conspiracy met just days after these conversations, officers conducted a traffic stop and "found approximately 12 kilograms of methamphetamine inside" the car. *Id.* at 22. And within days of these events, the primary target

6

of the investigation and person for whom agents obtained a phone-intercept order asked Cortez to send him Cortez's home address.

The affidavit also provides ample reason to believe that evidence of criminal activity would be found at Cortez's residence. The affidavit explains that "[i]ndividuals who illegally traffic narcotics routinely conceal . . . within their residence . . . records where they track sales, profits, weights, monies owed, and totals of their narcotics transactions." *Id.* at 26. It also provides that "[i]ndividuals who illegally traffic narcotics, and engage in other illegal conduct, take or cause to be taken, photographs/videos of themselves, their criminal associates, their property and their illegal activities. These individuals usually maintain these photographs/videos in their possession, [in various other places], and in their residences." *Id.* at 27. And the affidavit provides specific information confirming that Cortez's residence is the one identified as "Premises 8," including in Attachment A. *Id.* at 32, 36-45.

A "bare bones" affidavit is one "so lacking in indicia of probable cause as to render an officer's belief in it unreasonable." *Pope*, 467 F.3d at 917. Such an affidavit is not presented here, for the reasons just discussed. Those reasons include that Cortez was a target of an ongoing narcotics investigation involving the Texas Mexican Mafia, is identified as a Sergeant in the Texas Mexican Mafia, is a convicted felon, had recorded conversations about narcotics trafficking with other targets of the investigation, the confidential source who supplied information to the investigation was credible and reliable and had prior statements corroborated by drug seizures, at around the time targets of the investigation were discussing large-scale narcotics transactions a key target asked for and received Cortez's home address, and the affiant explained that in his experience narcotics traffickers store evidence of their activities in their homes.

A conclusion that this is no "bare bones" affidavit and that belief in a probable cause determination was reasonable defeats both of Defendant's arguments for suppression, and it reflects that the good-faith exception to the exclusionary rule applies. It also presages that a *de novo* evaluation of the affidavit for probable cause—which is unnecessary to conduct—would reflect that Defendant's arguments are misguided and without merit. *See United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter.").

Finally, Cortez takes issue somewhat in passing with the fact that weapons and narcotics were seized during the search, even though the warrant identifies records and proceeds of narcotics activity as being subject to seizure. *See* Mot. at 3 ("There is nothing that provides the magistrate [judge] with any substantial reason to believe that drugs, firearms, or evidence of a crime are to be found at Premises 8."). As the Government explains in its response, and to which Cortez offers no reply, it is well settled that officers may seize items of contraband in plain view. *See United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010). And as the Government further clarifies, again without contradiction from Cortez:

> Here, agents were permitted to search Defendant's residence for records and proceeds, and found a loaded pistol in the same place they found a narcotics ledger. They also found heroin in a closet were records and proceeds might be found. Agents founds items that were immediately apparent as contraband while conducting a lawful search. Therefore, the lack of a connection in the affidavit between any narcotics and firearms to Defendant's home is immaterial.

Resp. at 6 n.3.

## Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Suppress Evidence, Dkt. No. 325.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

SIGNED this 2nd day of February, 2022.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE